IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:13-cv-01186-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| WESTERN RADIO SERVICES CO., INC., | |
| Defendant. | |

S. Amanda Marshall, United States Attorney, Neil J. Evans, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Plaintiff.

Marianne Dugan, 259 E. 5th Avenue, Suite 200-D, Eugene, OR 97401. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Western Radio Services Co., Inc. ("Western Radio" or "Defendant") and the U.S. Forest Service ("Forest Service") are parties to a Communications Use Lease, designated CRE09, issued December 17, 2000 ("Lease"). The United States brings this declaratory judgment action against Western Radio seeking a declaration that the Lease is cancelled and that the United States is the owner of the structures and improvements and Western Radio has no legal ownership. Currently before the Court are Plaintiff's motion to dismiss Defendant's

PAGE 1 – OPINION AND ORDER

counterclaims (ECF 24), Plaintiff's motion for summary judgment (ECF 26), and Defendant's motion for summary judgment (ECF 32). For the reasons stated below, Plaintiff's motion to dismiss is granted in part, Plaintiff's motion for summary judgment is granted, and Defendant's motion for summary judgment is denied.

## STANDARDS

### A.  Motion to Dismiss

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Baca*, 652 F.3d at 1216. "A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## B. Motion for Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . . " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## C. Administrative Procedure Act

Western Radio brings a counterclaim under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"). The APA provides for judicial review of final agency action. 5 U.S.C. §§ 701-706. Under the APA, a court may set aside agency actions only if such actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the APA, an "agency must examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State*

*Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under this standard, an agency's action is arbitrary and capricious if: (1) the agency fails to consider an important aspect of a problem; (2) the agency offers an explanation for the decision that is contrary to the evidence; (3) the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise; or (4) the agency's decision is contrary to the governing law. *Org. Village of Kake v. U.S. Dept. of Agric.*, --- F.3d ----, 2014 WL 1229762, at *1 (9th Cir. Mar. 26, 2014). Although a court's "inquiry must be thorough, the standard of review is highly deferential; the agency's decision is 'entitled to a presumption of regularity,' and [a court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, --- F.3d ----, 2014 WL 975130, at *9 (9th Cir. Mar. 13, 2014) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971)).

## BACKGROUND

Western Radio leases land on Walker Mountain from the Forest Service on which Western Radio maintains a communications tower, a support building, and a generator pad (collectively, "Original Tower"). Beginning in August 2010, Western Radio constructed a new communications tower at the same site ("New Tower"). In a previous action, the Court held that Western Radio breached the Lease when it constructed the New Tower without receiving final approval from the Forest Service and that the New Tower was a continuing trespass on the Forest Service's land. *United States v. Western Radio Servs. Co.*, 2012 WL 3776474 (D. Or. Aug. 29, 2012) (*Western Radio I*). The Court ordered Western Radio to remove all trespassing structures and to restore the site by August 30, 2013. *United States v. Western Radio Servs. Co.*, 2013 WL 1867477 (D. Or. May 3, 2013) (*Western Radio II*). Western Radio appealed the Court's judgment and on July 5, 2013, the Court stayed its judgment during the pending appeal, except for the portion of the judgment prohibiting Western Radio from removing any of United States

Cellular Operating Company of Medford's equipment from the Original Tower. *United States v. Western Radio Servs. Co.*, Case No. 3:11-cv-00638-SI, Amended Judgment dated July 5, 2013, Docket No. 249.

In the previous action, the United States had requested that the Court cancel the Lease as a remedy to the breaches of the Lease that the Court had found on summary judgment. The Court declined to cancel the Lease because the parties had specifically agreed in the Lease to an administrative revocation procedure in the event Western Radio breached the Lease. *Western Radio II*, 2013 WL 1867477, at *1. The United States then commenced the revocation procedure that is now at issue.

On January 3, 2013, the United States sent a Notice of Noncompliance ("Notice") to Western Radio and also to counsel for Western Radio. AR 218-231. Due to his schedule, Richard Oberdorfer, the President of Western Radio, did not receive the Notice until January 17, 2013.[1] The Notice enumerated seven purported violations of the Lease by Western Radio. AR 219-20. Three of the alleged instances of noncompliance (Nos. 1, 2, and 4) were violations that the Court had previously found were breaches of the Lease and for which the Court had found Western Radio liable. *See Western Radio I*, 2012 WL 3776474, at *3-5. The Notice set out two options by which Western Radio could cure its noncompliance if it wished, and required Western Radio to elect a cure option on or before January 17, 2013. AR 220. The Notice stated that "[f]ailure to return a signed copy of either Option 1 or Option 2 to this office by January 17, 2013, will be

---

[1] The date when Mr. Oberdorfer received the Notice is disputed. Mr. Oberdorfer states in his declaration that he did not receive it until January 17, 2013. In other documents in the record, however, Mr. Oberdorfer acknowledges that the Notice was the primary subject of discussion at the January 10, 2013 mediation. AR 253. Because the facts are viewed in the light most favorable to the non-moving party, for purposes of Plaintiff's summary judgment motion, the Court accepts that Mr. Oberdorfer received the Notice on January 17, 2013. This dispute, however, is not material.

treated as evidence of your rejection of the opportunity to cure and will result in the revocation of [the Lease]." AR 220.

Option One required Western Radio within 30 days to provide a detailed schedule for completing the removal of the New Tower and other trespassing structures by July 1, 2013, identify contractors who would perform the removal, post a $65,000 bond, provide a detailed accounting of all equipment on Walker Mountain, and initiate a 30-day technical review period with all site users for new equipment on the Original Tower or equipment that will be moved from the New Tower to the Original Tower. AR 222. It also required Western Radio within 90 days to report any unresolved concerns raised by other site users and paint a satellite dish that was an unapproved color. AR 223.

Option Two required Western Radio within 30 days to identify contractors it would retain subject to the potential court order of removal, post a $65,000 bond, provide a detailed accounting of all equipment on Walker Mountain, and initiate a 30-day technical review period with all site users for new equipment on the Original Tower and all equipment on the New Tower. AR 224. It also required Western Radio within 90 days to report any unresolved concerns raised by site users, paint a satellite dish that was an unapproved color, provide a structural and electrical inspection report for the New Tower, provide construction plans by a licensed engineer for the New Tower, and obtain any required county permits for the New Tower. AR 225. The Notice informed Western Radio that the failure to perform any of the required tasks on the selected cure option would constitute grounds for the Forest Service to revoke the Lease, without further notice or opportunity to cure. AR 223, 225.

On January 10, 2013, the parties engaged in mediation. Much of the mediation was spent discussing the two options set forth in the Notice. *See* AR 243, 253. The parties were unable to

reach an agreement. On February 1, 2013, Western Radio responded to the Notice with an email in which Western Radio disputed the assertion that it had violated the Lease. AR 234-35. Western Radio did not select either of the two options to cure, did not complete the actions required under either of the options to cure, and did not request an extension of time to respond to the Notice.

On February 4, 2013, because Western Radio failed to confirm in writing on or before January 17, 2013, its intent to cure the noncompliance issues and, more significantly, because Western Radio did not timely perform any of the curative actions that were required to be performed within 30 days of the date of the Notice, District Ranger Holly Jewkes of the Forest Service revoked the Lease, effective immediately. AR 236-37. The revocation required that all Western Radio equipment be removed from Walker Mountain on or before July 1, 2013. The revocation stated that if Western Radio's equipment was not removed, pursuant to Lease V.B. and 36 C.F.R. § 251.60(i), any remaining equipment would become the property of the United States. Western Radio was given 45 days to appeal the revocation.

On March 20, 2013, Western Radio appealed the Forest Service's revocation of the Lease and requested an oral presentation. AR 240-41. On May 17, 2013, John Allen, Forest Supervisor, met with Mr. Oberdorfer to discuss the revocation. *See* AR 256-58. On June 11, 2013, Forest Supervisor Allen affirmed the decision of Ranger Jewkes to revoke the Lease and denied Western Radio's appeal. AR 268-75.

On June 24, 2013 and June 25, 2013, Western Radio submitted second-level appeals. AR 278, 280. On July 1, 2013, Regional Forester Kent P. Connaughton affirmed Forest Supervisor Allen's affirmance of Ranger Jewkes's revocation of the Lease and denied Western Radio's second-level appeal. AR 264-67, 285-86. This decision was not further reviewable

within the agency and, thus, constituted the final agency administrative determination. *Id.* On July 15, 2013, the United States filed this action seeking a declaratory judgment regarding the rights and responsibilities of the parties for Western Radio's structures and equipment on Walker Mountain.

## DISCUSSION

### A.  Plaintiff's Motion to Dismiss

The United States moves to dismiss Western Radio's two counterclaims—a claim under the APA and a claim seeking attorney's fees under the Equal Access for Justice Act, 28 U.S.C. § 2412 ("EAJA").

#### 1.  APA Counterclaim

Western Radio's counterclaim brought under the APA alleges that in 2005 and 2007 the United States approved the construction of the New Tower, that those approvals were final agency actions, that by filing the previous lawsuit and this declaratory judgment action arguing that construction of the New Tower was a breach of the Lease and constitutes a trespass the United States "*de facto* revoked" its 2005 and 2007 final agency decisions, and that the "revocation" of the 2005 and 2007 agency actions was arbitrary and capricious. Def.'s 2nd Am. CC, ECF 17, ¶¶ 20-25. The United States correctly points out that this Court has already determined that: (1) the United States did not approve the construction of the New Tower; (2) Western Radio breached the Lease by constructing the New Tower; and (3) the New Tower is a trespass. Because the Court previously found that the Forest Service did not approve construction of the New Tower and that the construction of the New Tower was a breach of the Lease by Western Radio and constitutes an ongoing trespass, the motion to dismiss the APA counterclaim allegations that the United States engaged in a "*de facto*" revocation of the 2005 and 2007 "approvals" of the New Tower is granted.

PAGE 8 – OPINION AND ORDER

In its response to the motion to dismiss, however, Western Radio appears to abandon its claim that the "revocation" of the 2005 and 2007 "approvals" were in violation of the APA and instead argues that the 2013 revocation of the Lease is a final agency action that was arbitrary, capricious, not in accordance with the law, and without observance of procedures required by law. The United States, although not conceding its argument that Western Radio failed properly to plead that the 2013 revocation of the Lease violated the APA, "suggests" that an APA review of the revocation of the Lease is "prudent" to avoid future litigation of the issue. Plf.'s Reply Br., ECF 52 at 9-10. That is also what Western Radio seeks. In the interest of judicial economy, the Court deems Western Radio's APA counterclaim amended to allege that the revocation of the Lease violated the APA and shall consider that claim on the merits. The motion to dismiss the APA counterclaim allegations that the 2013 revocation of the Lease violated the APA is denied.

### 2. EAJA Counterclaim

The United States also moves to dismiss Western Radio's counterclaim for attorney's fees under the EAJA. The EAJA provides:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection. . . .

28 U.S.C. § 2412(d)(1)(B).

EAJA fees are neither ripe nor justiciable until after there has been a final judgment in the action. *Id.*; *see also Sohappy v. Hodel*, 911 F.2d 1312, 1321 (9th Cir. 1990) ("Because there has been no final judgment in this action, this [EAJA fee] request is premature."); *Tippett v. United States*, 98 Fed. Cl. 171, 183 (2011) (dismissing without prejudice a claim for fees under the EAJA in a pending case as not ripe). The EAJA is a fee-shifting statute and "is not a highway to federal court." *Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 637 (D.C. Cir. 2000). "[T]o

warrant an award of attorney's fees [under the EAJA], a party must first prevail in its litigation."
*Roberts v. Napolitano*, 792 F. Supp. 2d 67, 76 (D.D.C. 2011). Accordingly, Western Radio fails
to state claim for relief under the EAJA because it cannot plausibly allege that there is a final
judgment in the action or that Western Radio is the prevailing party. Western Radio's
counterclaim pursuant to the is dismissed without prejudice.

Additionally, as discussed below, the Court grants summary judgment to the United
States on its declaratory judgment action and denies Western Radio's motion for summary
judgment. Thus, even if Western Radio had properly asserted a counterclaim for attorney's fees
under the EAJA, that counterclaim would be dismissed on the merits because Western Radio is
not the prevailing party.

**B.  The Motions for Summary Judgment**

The United States moves for summary judgment on its declaratory judgment claim,
arguing that there is no genuine dispute of material fact that Western Radio breached the Lease
and that the United States properly revoked the Lease.[2] Western Radio argues that the Court does
not have jurisdiction to consider the declaratory judgment claim because the Declaratory
Judgment Act does not provide a cause of action in this case. Western Radio also argues that it
did not breach the Lease and that is has been curing the alleged deficiencies. Western Radio also
moves for summary judgment on its claim that the United States violated the APA, which the
Court has narrowed to a claim that the 2013 revocation of the Lease violated the APA.

---

[2] In its Complaint, the United States had also sought a declaration that Western Radio's
structures and improvements on Walker Mountain now belong to the United States. This request
was withdrawn by the United States at oral argument.

**1. The Motion for Summary Judgment Brought by the United States is Granted Because the Lease was Properly Revoked**

> **a. The Court has jurisdiction to consider the declaratory judgment claim**

The United States seeks a declaration regarding the rights and obligations of the parties under the Lease and pursuant to federal regulations. Western Radio argues that the Court does not have jurisdiction to consider this claim because the Declaratory Judgment Act does not provide a cause of action in this case. Western Radio's argument is without merit.

"Under the Declaratory Judgment Act, a district court may 'declare the rights and other legal relations of any interested party seeking such declaration.'" *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011) (quoting 28 U.S.C. § 2201(a)). This includes declaring rights under a contract and whether a party has breached the contract. *Id.* at 1108. The Declaratory Judgment Act creates a remedy by which parties may seek a declaration of their rights and obligations, but the Declaratory Judgment Act does not confer jurisdiction on a case that otherwise could not be brought in federal court. *See Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011). Additionally, a declaratory judgment action must meet the case-or-controversy requirement of Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). Whether a declaratory judgment action meets Article III's case-or-controversy requirement depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.

The Court has jurisdiction in this case both under 28 U.S.C. § 1345 because the case was brought by the United States and under 28 U.S.C. § 1331 because the case involves a question of federal law. The Court exercises its discretionary jurisdiction to consider the declaratory

judgment claim because the facts alleged show that there is a substantial controversy between the parties as to whether Western Radio breached the Lease, whether the United States properly revoked the Lease, and whether the remedy originally sought (and withdrawn at oral argument) by the United States of taking ownership of the structures and improvements is appropriate. These issues have immediacy and warrant the issue of a declaratory judgment.

### b.  Western Radio breached the Lease

Much of Western Radio's arguments and evidence submitted in support of its summary judgment motion and in opposition to Plaintiff's summary judgment motion relate to Western Radio's contention that it did not breach the Lease. The Court has already found, however, that Western Radio breached the Lease. Western Radio is estopped from arguing that it did not breach the Lease based on the doctrine of issue preclusion.[3] As explained by the United States Court of Appeals for the Ninth Circuit:

> Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding."

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005)).

All three requirements are satisfied in this case. Whether Western Radio breached the Lease in constructing the New Tower and whether the New Tower constitutes a trespass was necessarily decided in the previous case, that case ended with a final judgment on the merits, and

---

[3] "Issue preclusion" is the preferred term for this doctrine, replacing "collateral estoppel." *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008) ("[I]ssue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'").

Western Radio both litigated those issues in the previous case and is litigating the same issues in this case. The Court previously found that Western Radio breached two clauses of the Lease.[4] Although the United States enumerated in the Notice a total of seven alleged instances of noncompliance and only three of the seven (Nos. 1, 2, and 4) had been determined by the Court to be breaches of the Lease, that fact is irrelevant for purposes of the pending motions. Western Radio cannot reasonably dispute that it breached the Lease in at least the three instances found by the Court; therefore the United States was entitled to move forward with the administrative revocation procedure.[5] The issue now before the Court is whether the United States properly revoked the Lease. In litigating this issue, Western Radio is estopped from arguing that it did not breach the Lease and that the New Tower does not constitute a trespass.

### c. Revocation procedures under the Lease

"Federal law governs the interpretation of contracts entered pursuant to federal law where the federal government is a party." *Chickaloon-Moose Creek Native Ass'n, Inc. v. Norton*, 360 F.3d 972, 980 (9th Cir. 2004); *see also Tehama-Colusa Canal Auth. v. U.S. Dep't. of the Interior*, 721 F.3d 1086, 1093 (9th Cir. 2013). The proper construction of federal contracts follows well-known principles of contract law, including that a contract "must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations," that "terms are to be given their ordinary meaning," and that "when the terms of

---

[4] The Court found that Western Radio breached Clauses III.B and III.C of the Lease. *See Western Radio I*, 2012 WL 3776474, at *3-5. (The Court notes that there was a scrivener's error in the *Western Radio I* opinion in that the Opinion erroneously refers to Clause III.B as Clause III.A and to Clause III.C as Clause III.B).

[5] In fact, in declining to cancel the Lease as a remedy in the previous action, the Court expressly found that the United States was "entitled" to "immediately" begin the administrative revocation procedures set forth in the Lease. *United States v. Western Radio*, Case No. 3:11-cv-0638-SI, Transcript of October 24, 2012 hearing, ECF 196.

a contract are clear, the intent of the parties must be ascertained from the contract itself." *Wapato Heritage, L.L.C. v. U.S.*, 637 F.3d 1033, 1039 (9th Cir. 2011) (citations and quotation marks omitted). "The fact that parties to a contract dispute its meaning does not, *ipso facto,* mean that the contract is ambiguous; a contract is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id.*

Here, the Lease is not ambiguous. Section V.B. of the Lease governs revocation, termination, and suspension. AR 36-37. It establishes that the Lease may be "revoked upon breach of any of the conditions herein. . . ." Lease V.B.2. Under the Lease, revocation "refers to an action by the Authorized Officer to end the lease because of noncompliance with any of the prescribed terms, abandonment, or for reasons in the public interest." Lease V.B.1. In the Lease, the "Authorized Officer" is defined as "the Forest Service official having the delegated authority to execute and administer this lease. Generally, unless otherwise indicated, such authority may be exercised by the Forest Supervisor or District Ranger of the National Forest wherein the [leased] lands are located." AR 34. Revocation is subject to an appeal. Lease V.B.1. and V.B.5.

To properly revoke the Lease, the Authorized Officer must "give the Lessee written notice of the grounds for revocation or suspension and a reasonable time, not to exceed 90 days, to complete the corrective action." Lease V.B.3. If the Lease is revoked for noncompliance, "the Lessee shall remove all structures and improvements within      [sic] days . . . and shall restore the site as nearly as reasonably possible to its original condition" unless that requirement is waived by the United States. Lease V.B.7. The Court finds that the Lease unambiguously provides that, if appropriate procedures are followed, the United States may revoke the Lease if Western Radio breached any of its terms. As noted above, Western Radio breached the Lease. Revocation was, therefore, authorized and an appropriate remedy under the Lease.

### d.  The reasonableness of the revocation of the Lease

The Lease and governing federal regulations establishes certain requirements that the United States must follow in revoking the Lease. These requirements are: (a) Western Radio must have breached the Lease; (b) an authorized officer ends the Lease and provides written notice of the grounds for revocation; (c) Western Radio must be given a reasonable time, not to exceed 90 days, to complete the required corrective action; and (d) revocation is subject to appeal pursuant to 36 C.F.R. part 214. Lease V.B; 36 C.F.R. § 251.60(2). The revocation of the Lease must also comport with the APA, such that the revocation was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. These requirements all have been met in this case.

### i.  Western Radio breached the Lease

The Lease allows revocation for a breach of any of its terms. Lease V.B.2. As discussed above, the Court has already found that Western Radio breached the Lease. Accordingly, that foundational requirement for revocation is satisfied.

### ii.  An Authorized Officer revoked the Lease

The Lease requires that revocation be instituted by an "Authorized Officer." Lease V.B.1. Western Radio argues that District Ranger Jewkes did not have the authority to revoke the Lease because it was the Acting Forest Supervisor who authorized the Lease and under 36 C.F.R. § 251.60(b) revocation can only be authorized by the person who issues the authorization or that person's successor. Thus, argues Western Radio, the revocation was improper and did not comply with the governing regulation. Western Radio's argument is not persuasive.

Under the terms of the Lease, the District Ranger is an Authorized Officer and, therefore, the revocation by District Ranger Jewkes complied with the terms of the Lease. It also complied with the governing regulations. The Court notes three provisions in the governing regulations

relevant to who had authority to revoke the Lease: (1) 36 C.FR. § 251.60(b), which defines an

"authorized officer" as the person who issues the authorization or that person's successor; (2) 36

C.F.R. § 251.51, which provides that an "authorized officer" is "any employee of the Forest

Service to whom has been delegated the authority to perform the duties described in this part;"

and (3) 36 C.F.R. § 251.52, which provides that "Special use authorizations shall be issued,

granted, amended, renewed, suspended, terminated, or *revoked* by the Chief, or *through*

*delegation*, by the Regional Forester, Forest Supervisor, *District Ranger* or other forest

officer . . . ." (emphasis added). Western Radio fails to identify any legal authority holding that

the "successor" under 36 C.F.R. §251.60(b) cannot be a successor via delegation of authority

and, to the contrary, 36 C.F.R. § 251.52 expressly provides for such a delegation for revocation

of special use permits and 36 C.F.R. § 251.51 contemplates delegation of authority generally for

authorized officers.

On April 22, 2010, the Forest Supervisor delegated signing authority for Special Use

Permits such as the Lease to the District Ranger. AR 115-18. Accordingly, before the revocation

at issue in this case, District Ranger Jewkes received the delegated authority by the Forest

Supervisor. The Court finds that she was, therefore, an "authorized person" under 36 C.F.R.

§ 251.60(b) as the successor via delegation to the Acting Forest Supervisor who had originally

authorized the Lease.

Even if a successor via delegation is not an "authorized person" under 36 C.F.R.

§ 251.60(b), it is undisputed that Forest Supervisor Allen affirmed the revocation of the Lease.

His affirmance of the revocation of the Lease was a decision revoking the Lease and he was the

successor to the Acting Forest Supervisor who had originally authorized the Lease. His

revocation, therefore, complied with 36 C.F.R. § 251.60(b). Additionally, his affirmance was

given an appellate review by the Regional Forester, which provided Western Radio with the one-level appellate review required under 36 C.F.R. § 214.7(a). Thus, the United States complied both with the Lease and the governing regulations in having an authorized officer revoke the Lease.

### iii. Western Radio was provided written notice and a reasonable time to cure

The Lease also requires that Western Radio be provided written notice of the grounds for revocation and a reasonable time to complete the corrective action. Lease V.B.3. Federal regulations also require that lessee be given written notice and "reasonable time to cure any noncompliance." 36 C.F.R. § 251.60(e). The United States sent the Notice, which detailed the grounds for revocation and the requirements to cure the deficiencies, to Western Radio and its counsel on January 3, 2013. The Notice required that if Western Radio wished to cure the deficiencies and avoid revocation, it must choose on or before January 17, 2013 one of two plans by which it could cure the deficiencies. More significantly, the options to cure required actions to occur within time periods ranging from 30 days to six months.

Option One involved removing the trespassing structures and required the following within 30 days: providing a schedule for removal of the trespassing structures, identifying contractors, posting a bond, providing a detailed accounting of certain equipment, and initiating a 30-day technical review period with all site users. Option One also required the following within 90 days: reporting any unresolved concerns raised by other site users and painting a satellite dish that was an unapproved color. Option One required the trespassing structures be removed on or before July 1, 2013.

Option Two involved remedying the noncompliance while waiting for a final court order regarding the trespassing structures (because Western Radio appealed this Court's determination

that the structures were trespassing to the Ninth Circuit and this Court stayed its order requiring removal of the structures pending appeal), and required within 30 days many of the same actions as Option One. Option Two also required within 90 days both of the actions required in Option One plus providing structural and electrical inspection reports, providing construction plans by a licensed engineer, and obtaining any required permits.

Western Radio argues that the Notice did not provide reasonable time to cure because Western Radio did not receive the Notice until January 17, 2013, which was the deadline for choosing one of the two options. Western Radio also argues that requiring it to choose one of two options was unreasonable and that instead of choosing an option, Western Radio began curing the alleged deficiencies. Finally, Western Radio argues that requiring it to perform work on equipment during the winter months was unreasonable. These arguments are unavailing.

When Western Radio actually received the Notice is not relevant for purposes of determining whether the Notice was reasonable. The Notice was sent via certified mail to Western Radio. It was also delivered to Western Radio's counsel. Additionally, the contents of the Notice were discussed at length during the mediation on January 10, 2013, which was one week before the deadline established for Western Radio to choose an option to cure. The Court finds that under these circumstances, the United States provided reasonable notice.

The Court also finds that the two-week deadline to respond to the Notice was reasonable under the circumstances. The United States did not require Western Radio to perform any acts on Walker Mountain within the two-week deadline, but merely to notify the United States if Western Radio intended to cure its breaches, and, if so, which method of curing the breaches Western Radio intended to pursue. Two weeks was a reasonable time period in which to require Western Radio to select a plan for curing the breaches, particularly in light of the litigation that

had occurred for more than 20 months before the Notice relating to the alleged breaches and how those breaches could be cured.

The Court further finds that the 30-day, 90-day, and six-month time periods allowed to cure the deficiencies were reasonable. The actions required within 30 days did not involve work on Walker Mountain that might be hampered by weather conditions, but were informational in nature. Similarly, the actions required within 90 days did not involve work on Walker Mountain, with the exception of painting the satellite dish. The Court finds that allowing 90 days to paint the dish was reasonable. Additionally, the United States allowed nearly six-months for Western Radio to remove the trespassing structures, if Western Radio elected that option to cure. That was a reasonable time period to remove the structures, particularly in light of the fact that the Court allowed Western Radio less than four months to remove the trespassing structures in its Order. *See Western Radio II*, 2013 WL 1867477, at *2.

Western Radio's arguments that the opportunity to cure was not reasonable primarily stem from Western Radio's position that it did not breach the Lease. As discussed above, that argument is foreclosed by the Court's earlier ruling. The Court finds that the United States complied with the requirements of the Lease and 36 C.F.R. § 251.60(e) in providing written notice and a reasonable time to cure.

The Lease was revoked on February 4, 2013. It was revoked because Western Radio had not identified which cure option it would pursue, had not completed any of the curative tasks that had been required to be completed within 30 days, and had responded to the Notice by disputing and attempting to re-argue that Western Radio had breached the Lease.

Western Radio argues that, although it did not elect either Option One or Option Two, it has been curing its breaches of the Lease. Western Radio offers no support for this argument,

other than the fact that the satellite dish has been repainted. Western Radio offers no factual data
or evidence that it provided a schedule for removal of the trespassing structures, identified
contractors, posted a bond, provided the requested equipment accounting, provided structural and
electrical inspection reports, provided construction plans by a licensed engineer, obtained any
required permits, or initiated a 30-day technical review period with all site users. "Conclusory
allegations unsupported by factual data will not create a triable issue of fact." *Marks v. United
States*, 578 F.2d 261, 263 (9th Cir. 1978).

Moreover, Western Radio argued to the Forest Service and currently to the Court that it
did not need to perform many of the required curative tasks because it did not breach the Lease
or had previously complied with the necessary requirements. For example, Western Radio argues
that it already supplied sufficient plans, but it relies on plans that the Court expressly found were
insufficient. As discussed above, Western Radio's arguments based on its contention that it did
not breach the Lease fail because the Court found that Western Radio did breach the Lease.
Thus, Western Radio fails to demonstrate a genuine issue of material fact that it cured the
deficiencies noted by the United States.

### iv. Western Radio was provided the appropriate level of administrative review

The Lease provides that discretionary decisions such as revocation are subject to the
appeal regulations of 36 C.F.R. § 251. Lease V.B.5. Pursuant to 36 C.F.R. § 251.60, the
revocation of special use permits such as the Lease is subject to the administrative review
procedures of 36 C.F.R. part 214. A one-level review is available, pursuant to 36 C.F.R.
part 214, for appealable decision made by, among others, District Rangers and Forest
Supervisors. 36 C.F.R. § 214.7(a).

Here, Western Radio was allowed two levels of administrative review of District Ranger Jewkes's revocation—one by Forest Supervisor Allen and a second-level review by Regional Forester Connaughton. This was more than what was required to comply with the appeal requirements of the Lease and the governing regulation. Moreover, even assuming Forest Supervisor Allen's affirmance of the revocation was the revocation by an "authorized officer," Western Radio was still granted the one-level review required under 36 C.F.R. part 214 when Regional Forester Connaughton reviewed Forest Supervisor Allen's affirmance of the revocation.

In revoking the Lease, the United States complied with the terms of the Lease and with 36 C.F.R. § 251.60. The Court finds that there is no genuine dispute of material fact as to whether the revocation was reasonable.

### 2. The Motion for Summary Judgment Brought by Western Radio is Denied Because the Revocation of the Lease Did Not Violate the APA

Western Radio moves for summary judgment on its counterclaim under the APA, arguing that the 2013 revocation of the Lease was arbitrary and capricious or otherwise not in conformance with the law. Western Radio argues that the revocation was arbitrary and capricious because it did not comply with the governing regulations in that District Ranger Jewkes was not an "authorized official" and because the Forest Service treated Western Radio differently than other lessees on Walker Mountain.

As discussed above, the Court finds that the Forest Service complied with the governing regulations and that an "authorized official" properly revoked the Lease. Moreover, in considering this issue in the context of Western Radio's APA counterclaim, the final agency action at issue in this case is the Regional Forester's decision affirming the revocation. AR 264-67, 285-86. In his decision, the Regional Forester considered the issue of whether District

Ranger Jewkes had authority to revoke the Lease and, relying on the delegation of authority, 36 C.F.R. § 251.51, Forest Service Manual at 2704.34, and the terms of the Lease, the Regional Forester determined that Western Radio's argument that the District Ranger did not have authority to revoke the lease was without merit. AR 265. In making this determination, the agency complied with the APA because the Regional Forester "examine[d] the relevant data and articulate[d] a satisfactory explanation for [his] action." *Motor Vehicle Mfrs. Ass'n of United States*, 463 U.S. at 43. The agency's decision is "entitled to a presumption of regularity" and "even '[i]f the evidence is susceptible of more than one rational interpretation, [the court] must uphold [the agency's] findings.'" *San Luis & Delta-Mendota Water Auth.*, 2014 WL 975130 at *9 (alterations in original) (quoting *Bear Lake Watch, Inc. v. FERC*, 324 F.3d 1071, 1076 (9th Cir. 2003)). The Court finds that the agency's determination that District Ranger Jewkes had authority to revoke the Lease was not arbitrary or capricious.

In support of its second argument, that the Forest Service acted arbitrarily and capriciously because it treated Western Radio differently than other lessees who breached their leases, Western Radio relies on information outside of the administrative record. In considering challenges under the APA, "[i]t is an established rule that 'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agric.*, 499 F.3d 1108, 1117 (9th Cir. 2007) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Extra-record evidence may be admitted under "limited circumstances" if it fits under one of four "narrow" exceptions. *Id.* These exceptions are:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or

> complex subject matter, or (4) when plaintiffs make a showing of
> agency bad faith.

*Id.* (citing *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).

The Court finds that none of these exceptions apply in this case, and the circumstances of the Forest Service's revocation of the Lease do not warrant departing from the general rule that judicial review under the APA is limited to the administrative record. *See Rendleman v. Shalala*, 21 F.3d 957, 961 n.5 (9th Cir. 1994) (finding that the plaintiff's "attempts to rely on materials outside the administrative record to demonstrate that the agency's decision in this instance departs from its practice on other occasions" did not warrant departing from the general rule that judicial review under the APA is limited to the administrative record).

Moreover, even if consideration of Western Radio's extra-record materials were warranted in this case, the evidence relied on by Western Radio does not "establish a 'settled' precedent contrary to the result in this case." *Id.* (citing *Atchison, T. & S.F. Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 805–08, (1973)). The evidence relied on by Western Radio involve instances that are either consistent with the result in this case or do not involve lessees who are similarly-situated to Western Radio.

In one instance, an unauthorized tower was built by an unknown entity, not the lessee, and the Forest Service demanded from the lessee that the unauthorized tower be removed but did not revoke the underlying lease. Declaration of Marianne Dugan, Ex. S, ECF 37-4. That situation is distinguishable from this case because, unlike Western Radio's unauthorized tower, the lessee did not build the unauthorized tower and cooperated with the Forest Service in attempting to ascertain who built the tower in order to get it removed.

Another instance relied on by Western Radio involves a tenant (the FBI) of a sub-lessee (The Oregon State Police Department ("OSP") and the Oregon Department of Transportation ("ODOT")) of a lessee (Bonneville Power Administration ("BPA")). The FBI apparently moved equipment from a Forest Service building on Walker Mountain into the OSP/ODOT portion of BPA's building without BPA's knowledge and BPA did not engage in the required 30-day technical review process. *Id*. Exs. O, P, & Q, ECF 36-7, 37-1, 37-2. The evidence shows that the Forest Service demanded that BPA: (1) ascertain whether the FBI's equipment had, in fact, been moved into the OSP/ODOT portion of BPA's building; (2) ascertain whether the FBI's equipment was operational; and (3) engage in the 30-day technical review if the FBI's equipment had been moved and was operational. This demand by the Forest Service was made on January 17, 2014, and Western Radio did not provide any evidence of BPA's compliance or lack thereof with the Forest Service's demands and the Forest Service's response, if any. The evidence does show, however, that the BPA, as lessee, did not deny or otherwise argue with the Forest Service, but instead cooperated with the Forest Service in ascertaining the status of the FBI's equipment.

This situation does not show that similarly-situated lessees are being treated differently than Western Radio. First, the Forest Service is demanding that BPA engage in the 30-day technical review process, just as the Forest Service demanded of Western Radio, before the Forest Service revoked the Lease. Second, the facts are distinguishable because the BPA did not know that equipment had been moved into its building, unlike in this case where Western Radio itself built new unauthorized equipment and moved equipment onto an unauthorized tower without engaging in the 30-day technical review process and because BPA is cooperating with the Forest Service in remedying the situation.

PAGE 24 – OPINION AND ORDER

The final instance relied on by Western Radio is a situation where there was confusion as to whether a user was a tenant of a lessee or a direct lessee itself. *Id.* Ex. R, ECF 37-3. At one point in time, the tenant was given a special use permit and that special use permit expired. The permit was not renewed because a permit is only required for the direct lessee, not tenants of the direct lessee. The tenant requested that the permit be re-issued retroactive to its expiration date and that the tenant be allowed to replace the lessee's tower and building. The Forest Service responded that the user was a tenant and, as such, does not need a permit because only the lessee is required to have a permit and that the lessee, and not the tenant, would have to take the appropriate steps to replace the lessee's tower or building. There is no evidence that any party was in breach of a lease, and this instance provides no support for Western Radio's argument that similarly-situated lessees who breach their leases are treated differently than Western Radio.[6]

The Court finds no genuine dispute of material fact concerning whether the Forest Service examined all relevant data and articulated a satisfactory explanation for its decision to revoke the Lease. The Court concludes as a matter of law that the Forest Service's decision to revoke the Lease did not violate the APA because it was not contrary to governing law, was not contrary to the evidence before the agency, was the result of a considered decision, and was not so implausible that it could not be the product of agency expertise. *Org. Village of Kake*, 2014 WL 1229762, at *1.

---

[6] Western Radio also argues that the Forest Service treated AT&T differently than Western Radio by not requiring AT&T to engage in the 30-day technical review process to ascertain whether its proposed tower interfered with other site users. The Court, however, has already found that the Forest Service's conduct with regard to whether AT&T's proposed tower interfered with other site users did not violate the APA and that Western Radio failed to submit comments regarding AT&T's proposed tower within the 30-day technical review period. *U.S. v. Western Radio Services Co.*, 869 F. Supp. 2d 1282, 1288-89 (D. Or. 2012).

## CONCLUSION

Plaintiff's motion to dismiss (ECF 24) is GRANTED IN PART and DENIED IN PART, Plaintiff's motion for summary judgment (ECF 26) is GRANTED, and Defendant's motion for summary judgment (ECF 32) is DENIED. Under the Declaratory Judgment Act, the Court declares as follows: the Communications Use Lease between the Forest Service and Western Radio, designated CRE09 and issued December 17, 2000, was properly revoked by the Forest Service and is cancelled.

**IT IS SO ORDERED**.

DATED this 28th day of April 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge